UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TROY K. SCHEFFLER,

       Plaintiff,

v().                                                     CASE NO.: 6:23-cv-1634-PGB-DCI

MICHAEL J. CHITWOOD,
In his individual capacity for actions        **DISPOSITIVE MOTION**
under color of law as an Employee of
Volusia County, and

JOHN DOE,
In his individual capacity for actions
under color of law as an Employee of
Volusia County, and

VOLUSIA COUNTY, FLORIDA
A political subdivision,

       Defendants.
_____/

## **DEFENDANTS' MOTION TO DISMISS**

      Defendants, Michael J. Chitwood, in his individual capacity ("Chitwood"), Michael J. Chitwood and John Doe in their official capacities ("Volusia Sheriff's Office"), and Volusia County, Florida (the "County"), pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), move this Honorable Court to dismiss the Complaint and state:

1. Chitwood is entitled to qualified immunity for the claims brought against him in his individual capacity.

2. The Complaint fails to state a plausible claim against the Volusia Sheriff's Office because it fails to sufficiently allege any purported constitutional violation was caused by a policy or custom of the Volusia Sheriff's Office.

3. The Complaint fails to state a plausible claim against the County because (a) it fails to sufficiently allege any constitutional violation caused by a policy or custom of the County and (b) because Sheriff Chitwood, in his official capacity, is an independent constitutional officer.

4. The Complaint seeks relief unavailable from governmental entities.

## MEMORANDUM OF LAW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 570 (2007)). To establish facial plausibility, a complaint must contain factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The court is not bound to accept as true a legal conclusion presented as a factual conclusion in a complaint. *Id.* Labels, conclusions, and mere "naked assertions" bereft of "further factual enhancement" are legally insufficient. *Twombly* at 555, 557.

I.      **SHERIFF CHITWOOD IS ENTITLED TO QUALIFIED IMMUNITY.**

Despite spanning 38 pages and 180 paragraphs, the gravamen of the Complaint is simple: a handful of comments Scheffler posted on the official Volusia Sheriff's Office Facebook page were hidden, which Scheffler contends violated his constitutional rights.  Beginning in February 2023, Scheffler, a resident of Minnesota, decided to share his opinions about Jews and Chitwood on the Volusia Sheriff's Office Facebook page.  (Doc. 1, ¶¶ 95-138.)  Scheffler dedicates most of the Complaint to recounting these opinions, much of which are antisemitic tropes. (Doc. 1, ¶¶ 12-94.)  According to Scheffler, a Sheriff's Office employee, John Doe, at the direction of Chitwood, began deleting and hiding Scheffler's posts critical of Chitwood or Jews.  (Doc. 1, ¶¶ 97, 103, 105, 111, 120, 123, 126, 129, 132, 136, 140.) Scheffler brings claims under 42 U.S.C § 1983 for violations of the First and Fourteenth Amendments.  (Doc. 1, ¶¶ 144-170.)

Qualified immunity protects government officials sued in their individual capacity "unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances."  *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013) (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002)).  Qualified immunity offers "complete protection

for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quotations omitted).

Scheffler must plausibly allege that (1) Chitwood personally violated his constitutional rights, and (2) those rights were clearly established at the time of the violation. *Morton* at 1281. "Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Lee* at 1194 (quoting *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). To survive a motion to dismiss, a complaint must contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (internal citations omitted).

Even taking all the Complaint allegations as true, Scheffler cannot show that Chitwood violated a clearly established right. "For the law to be clearly established to the point that qualified immunity does not protect a government official, 'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.'" *Hudson v.*

*Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting *Lassiter v. Alabama A&M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)). With rare exception, officials are entitled to qualified immunity unless their actions are contrary to then-existing *factually specific analogous case law* from the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Supreme Court of Florida. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) (noting the lower court erroneously "failed to identify a case where an officer acting under similar circumstance" was held to have violated the Fourth Amendment).

Just four months ago, on July 7, 2023, the Eleventh Circuit issued an unpublished opinion holding that a government official who blocked an individual from posting on a government-run Facebook page was entitled to qualified immunity. In *Taylor v. Palmer*, No. 21-14070, 2023 WL 4399992 (11th. Cir. 2023), the mayor of Adamsville, Alabama blocked a frequent critic from posting comments on the city's Facebook page in 2016 because she disagreed with the viewpoints expressed by the critic. *Id.* at *1. The critic sued, alleging a violation of the First Amendment. *Id.* The mayor moved for summary judgment, arguing she was entitled to qualified immunity, which the district court denied. *Id.* at *2.

On appeal, the Eleventh Circuit reversed, holding the mayor was entitled to qualified immunity because the plaintiff did not demonstrate a clearly established

right. The Eleventh Circuit noted there was no decision of the United States Supreme Court, the Eleventh Circuit, or Alabama Supreme Court[1] that "establishes that the government engages in impermissible viewpoint discrimination when it blocks members of the public on its own social-media page." *Id.* at *3. Furthermore, the question of how several well-established First Amendment "principles apply to a government's social media account – for example, its Facebook page – was not clear in December 2016 *and is not clear today*." *Id.* (emphasis added). The court declined to reach the merits and determine whether a government official violates the First Amendment when it blocks an individual from a social media account, *id.* at *4, n.2, and therefore the law remains unestablished in this circuit.

In finding the mayor was entitled to qualified immunity, the *Taylor* court found support from similar holdings of least three other circuits. *Id.* at *4 (citing *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1183–84 (9th Cir. 2022) (holding elected school-board officials acted under color of law and violated the First Amendment by blocking critics from the officials' social-media accounts but holding the officials had qualified immunity), *cert. granted*, No. 22-324, 2023 WL 3046119 (Apr. 24, 2023); *Novak v. City of Parma*, 932 F.3d 421, 434 (6th Cir. 2019)

---

[1] Here, there is similarly no controlling decision from the Florida Supreme Court establishing a right to post comments on a government-run social media page.

(holding police officers had qualified immunity for deleting social-media comments: "Courts have not reached consensus on how First Amendment protections will apply to comments on social media platforms"); *Wagschal v. Skoufis*, 857 F. App'x 18, 21 (2d Cir. 2021) (affirming qualified immunity for state senator who blocked citizen from page and hid comments)).[2]  Since the *Taylor* decision was issued on July 7, 2023, the undersigned is aware of no other decisions from either the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court on this issue.

The Circuits are split over whether social media sites like Facebook can be considered a public forum and whether a government official's conduct regarding social media sites should be considered "state action."  To date, the Second, Fourth, Sixth, Eighth, and Ninth Circuits have each addressed claims regarding access to government officials' social media pages, with each applying a different analysis and arriving at different conclusions.  *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019) (concluding that President Trump acts in his official capacity when he tweets, and therefore violates the First Amendment

---

[2] The *Taylor* court did not discuss two previous unpublished Eleventh Circuit opinions that involved government officials' social media accounts. Briefly, *Attwood v. Clemons*, 818 F. App'x 863 (11th Cir. 2020), considered an interlocutory appeal of a denial of Eleventh Amendment immunity and absolute legislative immunity related to claims that involved posts on social media websites.  The Eleventh Circuit observed that "social media accounts . . . *may be* a type of public forum under the First Amendment" but specifically did not pass on the merits of the First Amendment claim. *Id.* at 868.  In *Charudattan v. Darnell*, 834 F. App'x 477, 480 (11th Cir. 2020), the Eleventh Circuit presumed the sheriff's official Facebook page was a limited public forum because no party challenged that decision on appeal, but nonetheless found no constitutional violation when off-topic comments were removed from the Facebook page.

when he blocks individuals from his Twitter account based on their views); *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019) (holding that the chair of a county board of supervisors acted in her official capacity as a municipal official when she administered the chair's Facebook page and thus "acted under color of state law" when she banned an individual from that page); *Garnier v. O'Connor-Ratcliff*, 41 F.4th at 1177 (holding that school board trustee used their social media accounts as "an organ of official business" and violated the First Amendment when they blocked the Garniers from their social media pages); *Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021) (concluding that Missouri state representative Reisch was not acting under color of state law when she blocked a constituent from her Twitter account); *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022), *cert. granted*, 143 S. Ct. 1780 (2023) (holding that city manager Freed was not a state actor when he blocked a citizen from his public Facebook page, expressly "part[ing] ways with other circuits' approach to state action in this novel circumstance"). Indeed, these novel questions are currently before the United States Supreme Court, which granted certiorari in *Garnier* and *Lindke*, and recently heard oral arguments on October 31, 2023.

As the Eleventh Circuit observed in *Taylor v. Palmer*, the law concerning constitutional constraints on a government official's social media page is obviously far from resolved, let alone clearly established. Given the legal landscape, Scheffler

cannot hope to overcome Chitwood's entitlement to qualified immunity. This is especially true in this jurisdiction, where unlike the other circuits noted above, neither the United States Supreme Court, the Eleventh Circuit, nor the Florida Supreme Court have issued a binding decision establishing a First Amendment right to post comments on a public official's Facebook page. Chitwood is therefore entitled to qualified immunity, and the claims against him in his individual capacity should be dismissed.[3]

## II. THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE THAT ANY CONSTITUTIONAL VIOLATION WAS CAUSED BY A POLICY OR CUSTOM OF THE VOLUSIA SHERIFF'S OFFICE.

To the extent the complaint purports to bring a claim against Sheriff Chitwood (or John Doe) in their official capacities, this would be the same as a suit against the Volusia Sheriff's Office.[4] *See Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005) (citing *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997)). The

---

[3] Scheffler has also sued an employee of the Volusia Sheriff's Office, John Doe. This defendant has not been identified or served with the Complaint. Nonetheless, John Doe is also entitled to qualified immunity and should be dismissed for the reasons set forth in this Motion.

[4] It is unclear whether Scheffler seeks relief against Sheriff Chitwood in his individual capacity or in his official capacity, or both. In the case caption Scheffler claims to sue Sheriff Chitwood "in his *individual* capacity for actions under color of law as the Volusia County Sheriff." However, in the body of the Complaint, Scheffler claims only to sue Sheriff Chitwood "in his *official* capacity for actions under color of law as Volusia County Sheriff." (Doc. 1, ¶ 7.) Federal Rule of Civil Procedure 10(a) requires that all parties be named in the title of the complaint. *See Velma v. Gruler*, 808 Fed. Appx. 872, 876 (11th Cir. 2020) (holding that parties "who were not included in the case caption" were "not defendants in the case."). To the extent the Complaint allegations can be construed as naming the Volusia Sheriff's Office as a Defendant, the Volusia Sheriff's Office seeks dismissal for the reasons stated in this section.

Volusia Sheriff's Office cannot be held vicariously liable under section 1983 for constitutional violations committed by its employees. *See Monell*, 436 U.S. at 690-695. It is well established that a governmental entity, such as the Volusia Sheriff's Office, is only liable under section 1983 when an employee or agent undertakes an action in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may establish the existence of a "policy" by identifying either "(1) an officially promulgated policy or (2) an unofficial custom or practice of the [governmental entity] shown through the repeated acts of a final policymaker." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*).

Scheffler does not identify any rule, regulation, or policy promulgated by the Volusia Sheriff's Office which calls for the hiding of Facebook comments critical of Chitwood or Jewish people. The specific factual allegations concerning Facebook posts concern just five instances of Scheffler's specific posts being deleted. *See* Doc. 1 ¶¶ 145, 158. There are no facts alleged that describe an overarching, generally applicable policy or custom concerning Facebook posts. Notably, Scheffler does not offer a single example of Facebook posts other than his own being hidden. To the contrary, Scheffler complains that "Chitwood and John Doe precluded Plaintiff equal opportunity to participate as the rest of the public posting who were not having

their posts deleted or hidden" or "who did not have their account entirely blocked from making public posts." (Doc. 1, ¶¶ 162, 163, 166.)

In Count III, which is brought only against the County, Scheffler asserts generally that the County and the Sheriff's Office have a "culture of violating" constitutional rights, have "shown special racial deference to Jews[,]" and Facebook's algorithm censors protected speech. (Doc. 1, ¶¶ 174-177.) But this alone is insufficient to survive a motion to dismiss. *Hargis v. City of Orlando, Florida*, No. 6:12-cv-723-Orl-37KRS, 2012 WL 6089715 at *5 (M.D. Fla. Dec. 7, 2012) (granting motion to dismiss because conclusory statements that city had policy or custom that "permits, encourages, and praises" unconstitutional behavior was insufficient to meet the pleading standard under *Iqbal* and *Twombly*).

### III. THE COUNTY IS NOT A PROPER DEFENDANT.

As with a potential claim against the Volusia Sheriff's Office, to prevail against the County, Scheffler must show his constitutional rights were violated by a policy, custom, or practice of the County. *City of Canton*, 489 U.S. at 385; *Grech*, 335 F.3d at 1329. Scheffler must also demonstrate that the County has "authority and responsibility over the governmental function in issue." *Id.* at 1330. "[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (*en banc*). In analyzing whether a municipality had

control over a policymaker, the court must determine whether the municipality controlled the policymaker regarding the "particular area or function" at issue. *Grech*, 335 F.3d at 1331-32.

"[S]tate law determines whether a particular official has final policymaking authority." *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996). "[S]tate law always should direct [courts] 'to some official or body that has the responsibility for making law or setting policy'" in a given area. *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). Courts "may not assume that final policymaking authority lies in some entity other than that in which state law places it." *Id.* (citing *Praprotnik*, 485 U.S. at 126, 131). The issue of who is the responsible policymaker for a particular policy is a question of state law, not a question of fact for a jury to decide. *Praprotnik*, 485 U.S. at 124.

At all times, Scheffler's pertinent factual allegations exclusively concern the official Volusia Sheriff's Office Facebook page. Scheffler does not allege the County owns, controls, or operates the Volusia Sheriff's Office Facebook page, nor does he allege that any of the County's employees operate the Facebook page. This is a critical omission, because although Sheriff Chitwood is Volusia County's Sheriff, his office is not a subdivision of the County but is instead a separate and independent constitutional office. Fla. Const. art. VIII, § 1(d); *County of Volusia v. DeSantis*, 302 So.3d 1001 (Fla. 1st DCA 2020); *see also Demings v. Orange Cnty.*

*Citizens Rev. Bd.*, 15 So. 3d 604, 606 (Fla. 5th DCA 2009) ("As an independent constitutional officer, the Sheriff does not derive his authority from the County's charter or the board of county commissioners, and is neither generally accountable to the Board for his conduct in office nor subject to the board's direction in the fulfillment of his duties."). Under Florida law, neither Chitwood nor employees of the Volusia Sheriff's Office are County employees. Fla. Stat. § 30.53 ("The independence of the sheriffs shall be preserved concerning the . . . selection of personnel, and the hiring, firing, and setting of salaries of such personnel . . ."). The County is legally prevented from exercising dominion or control over the Sheriff's Office, and likewise any actions or policies carried out by the Sheriff's Office are not attributable to the County. For these reasons, any purported policy or practice of the Volusia Sheriff's Office is not a policy or practice of the County for purposes of *Monell* liability.

Scheffler has also failed to identify any County-specific policy that caused his constitutional rights to be violated. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (stating that there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). The Complaint does not identify "an officially promulgated" County policy, and instead makes vague and conclusory allegations about "a hostile stance against" and "a culture of violating" constitutional rights. (Doc. 1, ¶¶ 172, 174.) At most, the Complaint makes a passing

reference to Facebook's algorithm, which Scheffler claims the County "employs" to "censor, hide, and otherwise delete protected speech." (Doc. 1, ¶ 176.) But this alone is not sufficient to state a claim against the County. Scheffler's factual allegations specifically concern the official Volusia Sheriff's Facebook page – not the County's. And again, the County does not own or control the Volusia Sheriff's Facebook page. Thus, even assuming the allegations in the Complaint are true, Scheffler has not identified a "direct causal link" between any alleged County policy concerning Facebook pages and the constitutional deprivation complained of by Scheffler. The claims against the County should therefore be dismissed.

### IV.  SCHEFFLER CANNOT RECOVER PUNITIVE DAMAGES FROM THE GOVERNMENTAL ENTITIES.

Because punitive damages are intended to punish a wrongdoer whose action was intentional or malicious, this retributive purpose is not significantly advanced by exposing municipalities and other units of state and local government to punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-270 (1981). Here, Scheffler has alleged the Defendants should be liable for punitive damages. This allegation is contrary to long-standing United States Supreme Court precedent, and with respect to the County and the Volusia Sheriff's Office this claim should be dismissed with prejudice.

WHEREFORE, Defendants respectfully request the Court grant this Motion to Dismiss.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that on November 9, 2023 she conferred with Plaintiff, Troy Scheffler, via telephone.  The parties did not reach agreement as to the resolution of any part of the motion.  The conference occurred by telephone.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been electronically filed with the Clerk of Court via CM/ECF e-filing system and a copy sent via U.S. Mail to Troy Scheffler, 26359 Shandy Trail, Merrifield, MN 56465 on November 9, 2023.

  /s/ *Sarah Jonas*
Sarah Jonas, Esq.
Assistant County Attorney
Fla. Bar No.: 115989
123 W. Indiana Avenue
DeLand, Florida 32720
(386) 736-5950
sjonas@volusia.org / mefird@volusia.org