UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TROY K. SCHEFFLER,

    Plaintiff,

v.                                                                                  Case No: 6:23-cv-1634-JSS-DCI

MICHAEL J. CHITWOOD and
VOLUSIA SHERIFF'S OFFICE,

    Defendants.
_____/

## ORDER

Defendants, Sheriff Michael J. Chitwood and Volusia Sheriff's Office, move for summary judgment. (*See* Dkts. 67 & 69.) Plaintiff, Troy K. Scheffler, proceeding pro se, opposes the motion. (*See* Dkt. 68.) For the reasons outlined below, the court grants the motion.

## FACTS[1]

The Volusia Sheriff's Office "maintains an official public Facebook page, which permits members of the public," like Plaintiff, "to make comments in response to posts made by" the Volusia Sheriff's Office. (Dkt. 66 ¶ 7.) The official Facebook page of the Volusia Sheriff's Office "is the only social[-]media page at issue in this lawsuit."

---

[1] The court draws the facts from the parties' joint stipulation of agreed material facts, (Dkt. 66), the uncontroverted statements in the affidavit submitted by Defendants and in the affidavit's exhibits, (Dkt. 67-1), and the relevant statements in Plaintiff's second amended complaint, (Dkt. 43-1), and summary-judgment response, (Dkt. 68), of which Plaintiff has personal knowledge, *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

(*Id.* ¶ 8.)   Andrew Gant, a Volusia Sheriff's Office employee and an account administrator for the Facebook page, stated in an affidavit that the page's purpose is to disseminate "news and information" about the Volusia Sheriff's Office and to share "public health and safety announcements for Volusia County and the general public." (Dkt. 67-1 ¶¶ 1–4.)   Plaintiff asserts that another purpose is to "encourage public debate."   (Dkt. 68 at 3; *see* Dkt. 66 ¶ 10 ("Civil discussion and debate [are] encouraged . . . .").)

The Volusia Sheriff's Office "has a social[-]media policy, which is posted" on the Facebook page.  (Dkt. 66 ¶ 9.)  This policy "was in place at the time [Plaintiff] posted the comments at issue in this lawsuit."  (*Id.* ¶ 11.)  The policy states:

> Visitor posts [do not] necessarily reflect the views of the Volusia Sheriff's Office.  Posts and submissions on this site are subject to the public records provisions of Chapter 119, Florida Statutes.  Civil discussion and debate [are] encouraged, but comments that are graphic, obscene, vulgar, sexually explicit, threatening, harassing, [or] discriminatory, advocate criminal behavior, include clearly inaccurate information, are unrelated to the intended topic of discussion, contain spam[,] or provide links to other third[-]party sites[] may be removed.  The administrators of this page reserve the right, with or without notice, to block or restrict access and/or comments of any user who consistently violates these guidelines[.]  Please report crime to [9-1-1] or the non-emergency line, 386-248-1777.

(*Id.* ¶ 10.)  "Members of the public are able to leave comments on posts made on the . . . Facebook page, subject to [this] . . . policy." (Dkt. 67-1 ¶ 5.)  Gant stated that the Volusia Sheriff's Office "actively and uniformly enforces the social[-]media policy." (*Id.* ¶ 7.)   Plaintiff contends that it does not and points to a comment that Sheriff Chitwood made on Sheriff Chitwood's personal Facebook page—which,

according to Plaintiff, has a policy identical to the Volusia Sheriff's Office page—to show that Sheriff Chitwood's comment violates the policy. (Dkt. 68 at 3, 13–14; *see* Dkt. 43-1 at 5–6, 45.)

"Facebook makes its own decisions concerning moderation of content that appears on Facebook in general." (Dkt. 67-1 ¶ 12.) "Facebook's direct content moderation happens wholly independent[ly] from any decisions or actions taken" by Defendants. (*Id.*) In addition, the Volusia Sheriff's Office uses a Facebook feature called Moderation Assist to automatically hide certain comments on its Facebook page. (*Id.* ¶ 8.) The Volusia Sheriff's Office has selected four criteria for automatic hiding: comments by authors who have had Facebook accounts for one week or less, comments containing links, comments containing profanity, and comments by authors with no Facebook friends or followers. (*Id.*) "All users who comment on the . . . Facebook [p]age are subject to" screening by Moderation Assist for these four criteria. (*Id.* ¶ 9.) All of these criteria except for the profanity criterion "were selected to capture comments from accounts that were likely to use the . . . Facebook [p]age to spread spam or deceive members of the public into scams and expose them to fraudulent material." (*Id.* ¶ 10.)[2] Although the social-media policy does not advise

---

[2] Plaintiff calls the asserted purposes for the criteria, "false, unfounded, baseless, . . . [and] absurd," because the criteria are incompatible with using Facebook purely to participate in a public forum rather than to make friends, do not appear in the social-media policy, and are "akin to requiring a person to bring a friend to be able to speak at a town hall." (Dkt. 68 at 3.) According to Plaintiff, all the criteria "are enacted to censor comments" and to allow Defendants to cherry-pick which comments to reinstate based on the comments' content. (*Id.*) However, Plaintiff lacks personal knowledge of the purposes for the criteria and does not put forward evidence to counter Gant's affidavit. (*See id. passim*; *see also* Dkt. 67-1.) *See* Fed. R. Evid. 602. Further, Plaintiff's arguments do not create an inference

that comments from accounts created one week ago or less or lacking in any Facebook friends or followers will be hidden, it does indicate an anti-spam stance. (*See* Dkt. 67-1 ¶¶ 5, 8, 10; *see also* Dkt. 68 at 3.). The Volusia Sheriff's Office "does not use any specific keyword filters . . . to hide comments based on their content or opinions." (Dkt. 67-1 ¶ 11.)[3] Although the Facebook page "receives many comments that express ideas and opinions, some of which are critical of" the Volusia Sheriff's Office and Sheriff Chitwood, such criticisms are typically not hidden "because they do not violate the . . . social[-]media policy and are not flagged" by the four Moderation Assist criteria. (*Id.* ¶ 13.)

"Th[is] lawsuit concerns nine comments posted by [Plaintiff] on the [Volusia Sheriff's Office] Facebook page [that] were hidden from public view." (Dkt. 66 ¶ 14.) Plaintiff uses two Facebook accounts to comment as an everyday citizen on the page: one in his own name and one under a pseudonym. (*Id.* ¶¶ 13–14.) The parties stipulate for summary-judgment purposes that the nine paragraphs 99, 109, 117, 121, 124, 130, 134, 138, and 141 in the second amended complaint "accurately reflect[]" the

---

that the purposes stated in the affidavit are false, for the arguments do not mention the relationship—or lack thereof—between the criteria and spam, scams, and fraud. (*See* Dkt. 68.)

[3] Plaintiff argues that this statement is false because in prior motions to dismiss, Defendants blamed Facebook for hiding and deleting comments. (Dkt. 68 at 4.) Plaintiff maintains that Defendants' "changing admissions" create a genuine dispute of material fact precluding summary judgment. (*Id.*) Defendants reply that they "did not make any affirmative factual claims in any of the motions to dismiss"; rather, "[e]ach motion to dismiss assumed the facts of each version of the [c]omplaint were true and provided legal arguments for dismissal." (Dkt. 69 at 6.) After reviewing the motions to dismiss in this case (Dkts. 16, 23, 38, & 60), the court agrees with Defendants. Further, Plaintiff does not put forth evidence showing that the Volusia Sheriff's Office in fact uses specific keyword filters. (*See* Dkt. 68.)

substance of the nine comments. (*Id.* ¶ 15.)[4] All "of the comments were made through the [pseudonym] account" except for the comment mentioned in paragraph 141, which was made through the account in Plaintiff's name. (*Id.* ¶ 14.) Neither of Plaintiff's two accounts is banned or blocked by a Volusia Sheriff's Office employee from commenting on the Facebook page. (Dkt. 67-1 ¶ 22.)

All nine comments were automatically hidden by the Moderation Assist feature. (Dkt. 67-1 ¶ 15.) Each of the eight comments that Plaintiff made through his pseudonym account was hidden because the account had no friends or followers, and some of these comments were hidden for the additional reason that the account was newly created or the comment contained profanity. (*Id.* at 19–21.) The comment made through the account in Plaintiff's name was automatically hidden for containing profanity. (*Id.* at 5 (¶ 16), 23.) Gant stated that he did not know prior to this lawsuit that Plaintiff had attempted to comment on the Facebook page, did not personally hide or delete any comments made by Plaintiff on the page, did not receive directions from Sheriff Chitwood to hide or delete any comments on the page, and had no knowledge of any Volusia Sheriff's Office employee hiding or deleting any comments

---

[4] Plaintiff seems confused about the effect of this stipulation. (*See* Dkt. 68 at 10.) Without directly stating that the comment mentioned in paragraph 113 was not hidden, he suggests that the absence of the paragraph from the stipulation is evidence that it was not. (*See id.*) Such a suggestion is incorrect. *Cf. Bainbridge v. Turner*, 311 F.3d 1104, 1107 n.8 (11th Cir. 2002) ("The [j]oint [s]tipulation asserts that *retailers* ship to consumers only by common carrier, but it does not specify how *wineries* ship their product."). Further, an exhibit attached to Defendants' affidavit shows that the comment was indeed hidden because the account that made it had no friends or followers. (Dkt. 67-1 at 19; *see* Dkt. 43-1 ¶¶ 112–14.) Presumably, Defendants do not discuss the comment in their summary-judgment motion, (*see* Dkt. 67), because Plaintiff stipulated that it was not among the comments at issue, (*see* Dkt. 66 ¶¶ 14–15).

made by Plaintiff on the page. (*Id.* ¶¶ 18–21.)[5]

## PROCEDURAL HISTORY

Plaintiff initiated this action in August 2023 by filing a three-count complaint against Defendants under 42 U.S.C. § 1983. (*See* Dkt. 1.) The initial complaint alleged that Sheriff Chitwood "hid[] and delete[d] comments" that Plaintiff had posted on the Volusia Sheriff's Office Facebook page and thus "block[ed] . . . [his] account from making public posts." (*Id.* ¶¶ 145, 152, 158; *accord id.* ¶¶ 162–63, 176.) Count I asserted that this conduct violated the First Amendment by "denying [Plaintiff] his right to openly and publicly protest, express, . . . and otherwise make grievance with regard to . . . the government," and Count II asserted that the conduct violated the Fourteenth Amendment by denying Plaintiff the "equal opportunity to participate" through the Facebook page "as the rest of the public." (*Id.* ¶¶ 148, 162–63, 166.) Count III sought *Monell*[6] liability predicated on the violations described in Counts I and II and alleged that Defendants have "a persistent pattern and practice" and "systematic policy of [First] and [Fourteenth] Amendment suppression." (*Id.* ¶¶ 171, 177.) The initial complaint sought various forms of relief, including compensatory

---

[5] Plaintiff takes issue with these statements, contending that Sheriff Chitwood, through Gant or another employee, used the four Moderation Assist criteria to filter comments on the Facebook page. (Dkt. 68 at 4.) Because it is undisputed that Defendants used the Moderation Assist criteria to filter comments, the court takes Gant's statements to mean that Defendants did not take steps to hide or delete comments beyond selecting and implementing the criteria. Plaintiff also asserts: "[Gant] was aware that [the criteria] would censor protected speech and knew that he had a duty to timely reinstate comments that were made that did not violate policy and were otherwise protected by the [First] Amendment." (*Id.*) However, Plaintiff provides no factual or legal citation in support of this assertion, (*see id.*), lacks personal knowledge of Gant's mental state, *see* Fed. R. Evid. 602, and does not submit evidence to counter Gant's affidavit, (*see* Dkt. 68; *see also* Dkt. 67-1).
[6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

and punitive damages, injunctive relief, and legal fees. (*Id.* at 33–34.)

In December 2023, Plaintiff amended his complaint, (*see* Dkt. 22), in response to Defendants' motion to dismiss, (Dkt. 16). The first amended complaint addressed whether Sheriff Chitwood was sued in his individual or official capacity, (Dkt. 22 at 1–2), and added allegations to Counts II and III, (*id.* at 32–37). In April 2024, in response to another motion to dismiss, (Dkt. 38), Plaintiff filed a second amended complaint, (Dkt. 43-1). The second amended complaint contains new allegations, including that Defendants intended the Facebook page to be a public forum and engaged in viewpoint discrimination, but asserts the same section 1983 claims for the same relief against Defendants as the initial and first amended complaints. (*See id.*) In June 2024, Defendants filed a motion to dismiss the second amended complaint. (Dkt. 60.) That motion remains pending. In July 2024, discovery closed. (*See* Dkt. 18 at 1.) In August 2024, Defendants filed the instant motion for summary judgment. (Dkt. 67.)

## APPLICABLE STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving the

motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)). Moreover, "[a] motion, other legal memorandum, or brief may not incorporate by reference all or part of any other motion, legal memorandum, or brief." M.D. Fla. Loc. R. 3.01(f).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary

judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))).  In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).  The court will not weigh the evidence or make findings of fact.  *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).  Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party."  *Matsushita*, 475 U.S. at 587.

Although courts "give liberal construction" to documents filed by pro se plaintiffs, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), pro se plaintiffs are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002).  *See Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))).

## ANALYSIS

Defendants move for summary judgment on Counts I, II, and III arguing that Plaintiff cannot establish a First or Fourteenth Amendment violation.  (Dkt. 67 at 15–25.)  Because the court agrees with this argument, it does not address the other

arguments in Defendants' motion. (*See id. passim*.) The court discusses the three counts in turn.

### 1. First Amendment Claim (Count I)

The parties have stipulated that the Facebook page is a limited public forum for First Amendment purposes. (Dkt. 66 ¶ 12.) The law supports this stipulation. The page's social-media policy purports to limit speech on the page to "intended topic[s] of discussion" and describes numerous prospective restrictions on posts' content. (Dkt. 66 ¶ 10.) "In the social[-]media context, courts have . . . found that the comment threads of government social[-]media pages are . . . limited public forums" where, as here, "the government prospectively sets restrictions." *People for the Ethical Treatment of Animals v. Tabak*, 109 F.4th 627, 634 (D.C. Cir. 2024); *see McDonough v. Garcia*, 116 F.4th 1319, 1328 (11th Cir. 2024) (en banc) ("As between . . . designated and limited public forums, the Supreme Court instructs us to look to two features—whether the forum is limited to a specific class of speakers, and whether the forum is limited to speech on specific topics. If either (or both) is present, we have a limited public forum."); *see also Charudattan v. Darnell*, 834 F. App'x 477, 480 (11th Cir. 2020) (noting that "[i]n a prior order, the district court determined that the Sheriff's Office Facebook page was a limited public forum" and that "no party argue[d] to the contrary on appeal"); *Taylor v. Palmer*, No. 21-14070, 2023 U.S. App. LEXIS 17163, at *7 (11th Cir. July 7, 2023) (stating with regard to a city's Facebook page that "[o]n one view, a government page that allows members of the public to post comments is a limited public forum").

"In a limited public forum, . . . the government's restrictions on speech 'must not discriminate against speech on the basis of viewpoint' and 'must be reasonable in light of the purpose served by the forum.'" *McDonough*, 116 F.4th at 1329 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001)); *accord Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) ("Any restrictions made on expressive activity in a limited public forum only must be reasonable and viewpoint[-]neutral."). "[A] content-based regulation either explicitly or implicitly presumes to regulate speech on the basis of the substance of the message, while a viewpoint-based law goes beyond mere content-based discrimination and regulates speech based upon agreement or disagreement with the particular position the speaker wishes to express." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1241 (11th Cir. 2019) (quotations omitted). In the social-media context, "courts have found viewpoint discrimination where government officials deleted comments or blocked individuals from their social[-]media pages to prevent them from expressing negative opinions or contrary views." *Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2023 U.S. Dist. LEXIS 37355, at *21 (N.D. Ga. Mar. 7, 2023) (collecting cases); *accord Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (commenting that social-media accounts operated by a government official "may be a type of public forum under the First Amendment" and, "if so, [the official] may not be allowed to exclude others based on their views").

Here, Plaintiff's comments were hidden from the Facebook page because they contained profanity or because the accounts that made them were one week old or less

or had no friends or followers. (Dkt. 67-1 at 5 (¶¶ 15–16), 19–21, 23.) The profanity restriction is likely content-based. *Cf. Attwood v. Clemons*, 526 F. Supp. 3d 1152, 1172 & n.5 (N.D. Fla. 2021) (noting that "restricting speech in a designated public forum based solely on a propensity for profanity is arguably unconstitutional" because "content restrictions in a designated public forum are subject to strict scrutiny"); *Bear v. Escambia Cnty. Bd. of Cnty. Comm'rs*, No. 3:19cv4424-MCR/HTC, 2023 U.S. Dist. LEXIS 50924, at *23 (N.D. Fla. Mar. 25, 2023) ("agree[ing] that excluding speech from a designated public forum under a profanity filter would arguably be unconstitutional").

For the account-based restrictions, the court looks to the purpose behind the restrictions. *See Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015) ("[T]he fact that a distinction is speaker[-]based does not . . . automatically render the distinction content[-]neutral."). The account-based restrictions aim to prevent the spread of spam, scams, and fraud through the Facebook page. (Dkt. 67-1 ¶ 10.) Thus, they are likely content-neutral. *See ISKCON Miami, Inc. v. Metropolitan Dade County*, 147 F.3d 1282, 1287 n.5 (11th Cir. 1998) (noting that speech restrictions "aimed at the abusive practices associated with" face-to-face solicitation in airports did "not discriminate based upon either content or viewpoint"); *White Buffalo Ventures, LLC v. Univ. of Tex.*, 420 F.3d 366, 376 (5th Cir. 2005) (contemplating that prohibitions on "otherwise lawful commercial spam" may be "content- and viewpoint-neutral"); *Fac. Rts. Coal. v. Shahrokhi*, No. H-04-2127, 2005 U.S. Dist. LEXIS 16227, at *17 (S.D. Tex. July 13, 2005) ("The system-wide anti-spam filtering and limits on the amount of storage

capacity imposed on e-mail account use by faculty and staff who are authorized users are not content- or viewpoint-based restrictions . . . .").

Even if all the restrictions were content-based, "content-based discrimination is permissible in a limited public forum as long as viewpoint neutrality is maintained." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1234 (11th Cir. 2017) (J. Carnes, J., concurring); *accord Good News Club*, 533 U.S. at 106 ("When [a government] establishes a limited public forum, the [government] is not required to and does not allow persons to engage in every type of speech."). The profanity and account-based restrictions are viewpoint-neutral because they do not "target[] . . . 'particular views taken by speakers' on [a given] subject matter." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)); *see Planet Aid v. City of St. Johns*, 782 F.3d 318, 326 (6th Cir. 2015) ("A ban on profanity . . . is viewpoint-neutral . . . ."); *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1352 (11th Cir. 2024) (contrasting a "self-evidently . . . viewpoint-discriminatory" policy that "single[d] out speech that promote[d] religion" with a policy that "neutrally prohibit[ed] advertising containing profane language" (Newsom, J., concurring) (cleaned up)); *see also ISKCON*, 147 F.3d at 1287 n.5; *White Buffalo*, 420 F.3d at 376; *Fac. Rts. Coal.*, 2005 U.S. Dist. LEXIS 16227, at *17.

In addition to being viewpoint-neutral, Defendants' restrictions must be reasonable in light of the purposes of the Volusia Sheriff's Office Facebook page. *See*

*McDonough*, 116 F.4th at 1329. In the light most favorable to Plaintiff, the purposes of the Facebook page include "encourag[ing] public debate," (Dkt. 68 at 3; *see* Dkt. 66 ¶ 10), as well as disseminating "news and information" about the Volusia Sheriff's Office and sharing "public health and safety announcements for Volusia County and the general public," (Dkt. 67-1 ¶ 4). These purposes are compatible with one another, with the purpose behind the account-based restrictions (to prevent the spread of spam, scams, and fraud through the Facebook page, (*id.* ¶ 10)), and with the prohibition on profanity. The restrictions "need only be *reasonable*; [they] need not be the most reasonable or the only reasonable limitation[s]." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 808 (1985); *accord Bloedorn*, 631 F.3d at 1235. The profanity and account-based restrictions meet this requirement. *See ISKCON*, 147 F.3d at 1288 ("recogniz[ing] the potential for fraud . . . as [a] valid reason[] for banning solicitation" (citing *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 684 (1992))); *cf. Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 683 (1986) ("Surely it is a highly appropriate function of public[-]school education to prohibit the use of vulgar and offensive terms in public discourse. Indeed, the fundamental values necessary to the maintenance of a democratic political system disfavor the use of terms of debate highly offensive or highly threatening to others." (quotation omitted)).

Because the profanity and account-based filters that hid Plaintiff's comments are viewpoint-neutral and reasonable in light of the purposes of the Facebook page, Defendants are entitled to summary judgment on the First Amendment claim.

### 2. Fourteenth Amendment Claim (Count II)

Fourteenth Amendment equal-protection claims "can be divided into three broad categories." *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987). "The first and most common type is a claim that a [law] discriminates on its face." *Id.* "The second type of equal[-]protection claim is that neutral application of a facially neutral [law] has a disparate impact." *Id.* "The third type of claim is that defendants are unequally administering a facially neutral [law]." *Id.* The second amended complaint alleges that Defendants violated the Fourteenth Amendment by "preclud[ing] Plaintiff equal opportunity to participate [through the Facebook page] as the rest of the public," (Dkt. 43-1 ¶¶ 163, 166), indicating that Plaintiff brings the third type of claim, (*see* Dkt. 67 at 24). Such a claim requires Plaintiff to show (1) that he "was treated differently [from] similarly situated persons" with regard to a facially neutral law and (2) that Defendants "unequally applied the [law] for the purpose of discriminating against" him. *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996) (citing *E & T Realty*, 830 F.2d at 1109–10). Plaintiff cannot establish the first element.

The similarly-situated showing "requires some specificity," *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006), and courts must apply the similarly-situated requirement "with rigor," *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007), because "[d]ifferent treatment of dissimilarly situated persons does not violate the equal[-]protection clause," *E & T Realty*, 830 F.2d at 1109. "The entities being compared must be prima facie identical in all relevant respects," and Plaintiff must

"show that [he] and [his] comparators are similarly situated in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker." *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) (cleaned up).

Here, the summary-judgment record contains examples of comments made by other accounts on the Facebook page but lacks details about the comments and accounts necessary to satisfy the similarly-situated element. For example, the second amended complaint provides the content of comments from other accounts and the name of the account that made each comment but does not give other important details about each account—such as the identity of its user, the date it was created, or the number of friends or followers it had—or about each comment—such as whether or not it had been hidden at any point. (*See* Dkt. 43-1 ¶¶ 121, 124, 130, 138.)[7] An exhibit to Gant's affidavit presents a composite of comments made by other accounts on the page to support his statement that comments critical of Sheriff Chitwood and the Volusia Sheriff's Office are typically not hidden because they do not meet the Moderation Assist criteria. (Dkt. 67-1 at 4–5 (¶ 13), 12–17.) This exhibit furnishes slightly more information about comments from other accounts and offers more examples of such comments but still does not supply the above details about the

---

[7] The second amended complaint indicates that Plaintiff's pseudonym account and another user's account were "reported" as "troll[s]." (Dkt. 43-1 ¶ 130; *see also id.* ¶ 127.) "[I]nternet trolling" means "harassing [social-media users] for [one's] own entertainment." *United States v. Moran*, 57 F.4th 977, 981 (11th Cir. 2023). The parties do not brief this trolling issue, (*see* Dkts. 67, 68, & 69), so the court mentions it only to illustrate another detail potentially germane to the similarly-situated analysis about which the record contains limited information.

accounts and the comments. (*See id.*) The stipulation of facts (Dkt. 66) and the summary-judgment response (Dkt. 68) do not supply these details, either. Without such details, Plaintiff cannot show that he was treated differently from similarly situated persons when his comments were hidden from the Facebook page.

Further, throughout this case, Plaintiff has referred to comments that Sheriff Chitwood made through Sheriff Chitwood's personal social-media pages including those on X (formerly Twitter) and Facebook, through Volusia Sheriff's Office internal emails, and through an email to someone named Michael Weaver. (*See, e.g.*, Dkt. 43-1 ¶¶ 15–16, 21.8, 27, 98, 106–08, 112, 116, 133, 168.5, 173.4–174.9, 175.6, 179.6; *id.* at 41, 45; Dkt. 68 at 13–15.) To the extent Plaintiff refers to these comments to claim that he has been treated differently from Sheriff Chitwood with regard to the Moderation Assist criteria used to hide comments on the Volusia Sheriff's Office Facebook page, (*see* Dkt. 68 at 13–14), Plaintiff and Sheriff Chitwood are not similarly situated because Sheriff Chitwood is the Sheriff whereas Plaintiff is an everyday citizen and because Sheriff Chitwood's comments did not appear on the Volusia Sheriff's Office Facebook page, (*see* Dkt. 67-1 at 14-16), but on his own Facebook page, (*see* Dkt. 43-1 at 45), and in online communications unrelated to Facebook. *See PBT Real Estate*, 988 F.3d at 1285.

Because Plaintiff cannot show that he was treated differently from similarly situated persons when his comments were hidden, Defendants are entitled to summary judgment on the Fourteenth Amendment claim.

### 3. *Monell* Claim (Count III)

Plaintiff predicates the *Monell* claim in Count III on the constitutional violations asserted in Counts I and II. (*See* Dkt. 43-1 at 34–38.) Because, as discussed above, Plaintiff cannot establish a constitutional violation for Counts I and II, the "related *Monell* claim necessarily fail[s]." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1304 (11th Cir. 2024); *accord Turner v. Williams*, 65 F.4th 564, 589 (11th Cir. 2023) ("An official policy cannot be the moving force of a constitutional violation if there is no constitutional violation." (quotation omitted)). Consequently, Defendants are entitled to summary judgment on Count III.

## CONCLUSION

Accordingly:

1. Defendants' motion for summary judgment (Dkt. 67) is **GRANTED**.
2. Defendants' motion to dismiss (Dkt. 60) is **DENIED as moot**.[8]
3. The Clerk is **DIRECTED** to enter judgment in favor of Defendants, to terminate any other pending motions and deadlines, and to close this case.

**ORDERED** in Orlando, Florida, on October 28, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Unrepresented Parties
Counsel of Record

---

[8] *See Abdullah v. City of Jacksonville*, 242 F. App'x 661, 662–63 (11th Cir. 2007) (rejecting the section 1983 plaintiff's arguments that the district court erred when it granted the defendants' motion for summary judgment before an answer was filed).